**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND (NORTHERN DIVISION)**

| | | |
|---|---|---|
| TECH USA, LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No.: |
| | ) | |
| JENNIFER S. CLAYTON, | ) | |
| and STRATEGIC STAFFING | ) | |
| SOLUTIONS, L.C., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| _____ | ) | |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

NOW COMES the Plaintiff TECH USA, LLC ("TECH USA" or "Plaintiff") by and through its attorneys Allan P. Hillman, Esq. of Kern & Hillman, LLC and Grover C. Outland, III, General Counsel, TECH USA, and sues Defendants Jennifer S. Clayton ("Ms. Clayton") and Strategic Staffing Solutions, L.C. ("S3"), a Michigan Corporation with its principal office in Detroit, Michigan (collectively, "Defendants"). TECH USA sues Defendant Ms. Clayton for breach of contract (post-term covenant not to compete); breach of contract (confidential information); breach of contract (misappropriation of company property); statutory trade secret misappropriation; breach of duty of loyalty; common law unfair competition; and civil conspiracy; and sues Defendant S3 for tortious interference with the contract between Plaintiff and Ms. Clayton; statutory trade secret misappropriation; common law unfair competition; and civil conspiracy.

**THE PARTIES,**
**JURISDICTION AND VENUE**

**TECH USA**

1.	TECH USA, LLC is a Maryland limited liability company with its principal place of business at 8334 Veterans Highway, Millersville, MD 21108.

2.	TECH USA is a mid-size competitor in the nationwide and worldwide market for providing customized staffing consulting, and subcontracting support to commercial and government clients.  Plaintiff opened for business in a single 1,000 square foot office in Millersville, Maryland in early 1998 and has, in the past fourteen years, grown to 12 offices in 10 States.  TECH USA has expertise particularly in the areas of information technology, engineering, aerospace and government services, infrastructure/telecommunications, and scientific services.  Its competitors range from larger companies than TECH USA (such as S3), to mid-sized companies (like Plaintiff), to small start-ups.  TECH USA develops close working relationships with its corporate and non-corporate customers in order better to understand and service their personnel and hiring needs, and, furthermore, extensively trains and develops close working relationships with its internal and external (contract) employees in order more completely and professionally to meet TECH USA's customers' personnel requirements and hiring needs.

**DEFENDANT MS. CLAYTON**

3.	Defendant Ms. Clayton is an individual and a resident of North Carolina.  On information and belief, she carries on a regular business, is employed, or habitually engages in a vocation at the Charlotte, North Carolina office of Defendant S3 at 128 S. Tryon Street, Suite 1720

2

Charlotte, NC 28202. On information and belief, Ms. Clayton resides at 6724 Constitution lane

Charlotte, NC 28210.

**DEFENDANT S3**

4.      Defendant S3's website recites that it is a Michigan corporation that specializes in

information technology consulting, among other things.  Pursuant to information on that website,

its principal office is in Detroit, Michigan, 645 Griswold St., Suite 2900, Detroit, MI 48226.  As

its website discloses, it has twenty (20) offices around the country, including offices in states

adjoining Maryland (Virginia and Pennsylvania).   On information and belief, Defendant S3,

either directly or by an agent/its agents:

   (i) transacts or has transacted business in the State of Maryland by (a) soliciting and/or

        hiring Maryland residents for contract assignments and/or direct placements in Maryland

        and/or in other States, (b) advertising via its website and other means and/or making

        offers to Maryland residents to work on a contract or direct placement basis for

        Defendant S3's customers in Maryland and/or in other States, and/or (c) soliciting,

        making offers to and/or providing services to the Maryland offices of

        companies/customers headquartered in other States and/or in Maryland;

   (ii) contracts and/or has contracted to supply personnel and/or services in the State of

        Maryland;

   (iii) causes and/or has caused tortious injury to Plaintiff, which is headquartered in

        Maryland, by an act of tortious interference with a contract entered into in Maryland

        which specifically provides for jurisdiction before the courts of the State of Maryland;

   (iv) causes and/or has caused tortious injury to Plaintiff, which is headquartered in

        Maryland, by an act (or omission) outside of Maryland, and Defendant S3 regularly

does or solicits business and/or advertises for business and/or employees and/or engages in other persistent course(s) of conduct in the State and/or derives substantial revenue from services or personnel used, provided, located, contracted, and/or assigned in the State, all as set forth in (i) and (ii) above.

This Court has jurisdiction under all Counts of this Complaint pursuant to 28 U.S.C. §1332, because the parties are of diverse citizenship and the amount in controversy, with respect to the equitable claims alone, exceeds the sum of $75,000, exclusive of interest and costs. Jurisdiction and venue are proper in this judicial district because Defendant Ms. Clayton expressly agreed in paragraph 7 of her Confidentiality/Non-Competition Agreement with Plaintiff (a true and correct copy of which Agreement is attached hereto as Exhibit A) that she irrevocably consents,

> in any action brought by the Company in connection with any matters described in paragraph 5 of this Agreement [providing for injunctive relief where TECH USA has been caused immediate irreparable harm], to the jurisdiction of any federal or state court within the State of Maryland, as the only mandatory and proper forum, and [she] waive[s] all questions, issues, and defenses as to personal jurisdiction and venue for the purpose of carrying out this provision.

5.      Agreement ¶5 provides that in the event of any breach of the "above provisions" of the Agreement (i.e. paragraphs 1-4, including, without limitation, covenants relating to Confidential Information, Trade Secrets, Company Property, Non-solicitation, and Non-competition), such breach will cause TECH USA "immediate irreparable harm and that no remedy at law would be adequate to compensate [TECH USA] in any such event." And, further, in the event of any such breach, Defendant Ms. Clayton agrees in ¶5 that Plaintiff "shall have the right to proceed directly to any state or federal court in Maryland under the usual equity rules in order to obtain injunctive relief, including, without limitation, temporary restraining orders,

4

preliminary injunctions and permanent injunctions against such breach (threatened or otherwise)."  Agreement ¶5 further provides that the injunction shall run for a period of twelve months from the date the injunction is granted, rather than twelve months from the date of Termination of Employment (in this case, the February 11, 2013 date of Ms. Clayton's resignation).

6.       Paragraph 8 of the Confidentiality/Non-Competition Agreement requires, except for "legal actions for matters described in paragraph 5" of the Agreement (this Complaint being such an action), that claims between the parties must first be submitted to mediation to take place in the Baltimore, MD metropolitan area pursuant to then-prevailing Employment Dispute Resolution Rules of the American Arbitration Association.

## THE CONTROVERSY

8.       Pursuant to the terms of the aforementioned Confidentiality/Non-Competition Agreement between Plaintiff and Ms. Clayton, she became an employee of Plaintiff on or about March 18, 2011, serving first as a Recruiter and then, after a promotion, as an Account Executive in TECH USA's information technology (IT) division or vertical (the "IT Vertical").   After almost two years with TECH USA, she suddenly resigned from TECH USA's employment as an Account Executive on February 11, 2013 and that day informed TECH USA management that she would be working for Defendant S3 at its Charlotte, NC office in the essentially identical role of Account Manager.   Over her 23-month period of employment, TECH USA spent tens of thousands of dollars on Ms. Clayton's salary, training and development as a Recruiter and then in sales as an Account Executive.   Defendant Ms. Clayton worked solely out of TECH USA' s Charlotte, NC office, at which office she abruptly resigned her TECH USA employment on February 11, 2013.   A recent "screen shot" of Defendant Ms. Clayton's LinkedIn profile (a true

5

and correct copy of which is attached hereto as Exhibit B) taken during the first week of March 2013, confirms that she is in fact working as an Account Manager in the Charlotte office of Defendant S3, which specializes in the same information technology consulting that Plaintiff provides (and in which Defendant Ms. Clayton worked in the IT Vertical).

9.      As set forth below, the Confidentiality/Non-Competition Agreement protects TECH USA's trade secrets and Confidential Information (collectively "Confidential Information") and also requires Defendant Ms. Clayton to refrain from, among other things, (a) competing with TECH USA within a limited geographic area, (b) soliciting TECH USA's employees and/or encouraging the departure of any of TECH USA's employees from TECH USA's employment for a limited time, and (c) soliciting TECH USA's clients/customers for a limited period of time after Ms. Clayton leaves its employ.

10.      Paragraph 3(c) of the Confidentiality/Non-Competition Agreement that Defendant Ms. Clayton signed provides (in pertinent part) that ". . . for twelve (12) months after Termination of Employment, [each Individual Defendant] will not in any manner:

> solicit, induce, attempt to solicit or induce or assist others to solicit, induce or attempt to solicit or induce any Customer (or of the TECH USA Companies) to terminate, eliminate, or reduce its business relationship with [TECH USA], or do anything, directly or indirectly to interfere with the business relationship between [TECH USA] and (i) any of their/its Customers. . .

11.      Subparagraph (a) of Confidentiality/Non-Competition Agreement ¶ 4 (Non-competition) provides (in pertinent part) that

> . . . for twelve (12) months after Termination of Employment, [Ms. Clayton] agree[s] that [she] will not, either directly or indirectly, in any manner or capacity, as employee, principal, agent, partner, officer, director, member of any association or limited liability company, member of any association or limited liability company, consultant, advisor or in any capacity other than in [her] capacity as an employee of [TECH USA]:

> (a) . . . (after Termination of Employment) engage in or work for any individual, business, corporation, other entity  or activity which engages (in whole or in part) in the business of recruiting or providing employees, on a temporary or permanent basis, from or in an office located within fifty (50) miles of any of [TECH USA's] offices in which [she] worked during the last twenty-four (24) months of [her] employment with [TECH USA];

As a general matter, TECH USA does not seek to bar Ms. Clayton from working in the staffing industry.   Rather, consistent with the express wording of the above-quoted contractual restriction, Plaintiff seeks only to restrain her from any of the activities prohibited by Agreement paragraph 4(a) within 50 miles of Plaintiff's Charlotte, NC office, for one year.  The one year commences upon the later of the termination of employment or the date an injunction halting any violation is granted. (Id at ¶ 5).  This provision is designed to address precisely the situation which exists here:  TECH USA bargained for a full year of protection.  It has confirmed it was not receiving that for which it had bargained; unless the one year restriction runs from the date of the Court's injunction order, it will lose a material part of its bargained-for protection.

12.     Among other things, injunctive actions for Trade Secret/Confidential Information violations (Agreement, § 1), Company Property violations (Agreement § 2), and breaches of the post-term covenants not to compete and related claims (Agreement, § 4(a)) are to be litigated in a court of competent jurisdiction such as this Court.  Hence this Complaint.

13.     From conversations with Defendant Ms. Clayton after she announced her resignation, Plaintiff understands that, at some point prior to her resignation announcement, Defendant met with one or more representatives from Defendant S3, who advised her not to worry about the post-term covenants in her Agreement with TECH USA and that she was "fine" to join Defendant S3 in its Charlotte office, thereby causing TECH USA irreparable harm. For any competitor of TECH USA (such as S3) to state or imply to any TECH USA employee that

TECH USA's Confidentiality/Non-Competition Agreement is unenforceable causes TECH USA irreparable harm.

14.     On information and belief, in the course of Defendant Ms. Clayton's meetings and or communications with Defendant S3, she disclosed to S3 the identity of certain TECH USA customers, as well as other information regarding those customers, which customer information constitutes TECH USA's Trade Secrets and/or Confidential Information, and such disclosures have caused TECH USA irreparable harm.   Defendant Ms. Clayton's disclosures of such information were in violation of Confidentiality/Non-Competition Agreement, ¶ 1, as detailed below, and of the Maryland Uniform Trade Secrets Act, as also detailed below.

15.     On February 12, 2013, TECH USA sent Defendant Ms. Clayton a demand email (a true and correct copy of which demand email is attached hereto as Exhibit C); TECH USA has never received a response from her to that email.  On February 12, 2013, TECH USA also sent Defendant S3 a demand letter (a true and correct copy of which demand letter is attached hereto as Exhibit D), and S3, by its in-house counsel responded by letter dated February 18, 2013 denying, among other things, any wrongdoing in extending an employment offer to Defendant Ms. Clayton, and alleging that S3 extended an offer to her in North Carolina to specifically work on an account/customer there with which TECH USA does not have a business relationship. After that February 18 letter, TECH USA's in-house General Counsel had a telephone conference with Defendant S3's in-house counsel in which S3 confirmed that it had no intention of moving Defendant Ms. Clayton to another S3 office outside of the prohibited 50-mile radius in the Agreement she signed with TECH USA.  At some point after her February 11, 2013 resignation from TECH USA, Defendant Ms. Clayton started work with Defendant S3 at its Charlotte, NC office, well within the fifty-mile prohibited zone (i.e., 50 miles from TECH

8

USA's Charlotte, NC office) in violation of the limited Non-Competition covenant to which Ms. Clayton had agreed in her Confidentiality/Non-Competition Agreement with TECH USA. Defendant Ms. Clayton has repeatedly made her continued presence as a S3 employee in the Charlotte, NC market, in violation of her contractual obligations, known to various TECH USA employees.  Since her February 11 resignation from TECH USA employment, her lengthy, on-site meeting the following day with various TECH USA employees in Plaintiff's Charlotte office, and her subsequent LinkedIn updates and other communications with current TECH USA employees about her new position with S3 and the opportunity there, have all trumpeted her violations of her Agreement with TECH USA.

16.     During mid-late February 2013, Plaintiff TECH USA learned of Defendant Ms. Clayton's violation of her Confidentiality/Non-Competition Agreement with TECH USA, and, on information and belief, of the Defendant S3's tortious interference with contractual relations and other wrongdoing, and this suit followed promptly.

17.     Under paragraph 1 (<u>Confidential Information/Trade Secrets</u>) of the Confidentiality/Non-Competition Agreement between Defendant Ms. Clayton and Plaintiff, Defendant Ms. Clayton agreed that "during [her] employment by [TECH USA] and, after [her] termination, whether by [Defendant Ms. Clayton or TECH USA] with or without cause (collectively "Termination of Employment"), [she agrees] that [she] shall not use for [her] own benefit, or the benefit of any third party, or disclose or divulge to any third party, any Confidential Information (as defined below) or Trade Secrets, as defined in the Maryland Uniform Trade Secrets Act ("MUTSA")."  Under such paragraph 1, "Confidential Information" means, <u>inter alia</u>, all information

> (the selection, arrangement, and compilation of which is not generally known by [TECH USA's] competitors or the general

public) concerning [TECH USA], including, but not limited to: (a) its/their financial affairs, sales, and marketing strategies; business and marketing plans, profit margins and pricing policies and practices, sales and marketing techniques; financial data and plans history and data forecasts; fee schedules, orientation guides, commission and/or bonus plans; personnel information including without limitation compensation structures, qualifications, and hiring practices, personnel training techniques and materials; product manuals, training manuals, presentations, and materials (whether provided at conferences, meetings, over the Internet, or using other means of communication/transmission; inventions, processes and compilations of information; records and specifications, computer database, programs and software; acquisition plans; pricing and costs; (b) any of the following information about corporations, companies, or other entities, including, without limitation, their end-clients (collectively Customers) for which [TECH USA] employs, recruits, supplies or otherwise finds or arranges employees: any lists or other compilations of Customers;  such  Customer's names, addresses, and direct-dial, mobile, and other telephone numbers; staffing requirements, personnel needs, pricing sensitivities or preferences; margin tolerances regarding pricing….

18.     Under Confidentiality/Non-Competition Agreement ¶ 2 (Company Property), "upon Termination of Employment, [Defendant Ms. Clayton] agree[s] to immediately return to [TECH USA] any and all property, records and documents [each Individual Defendant] obtained or developed in the course of such employment, including, without limitation, any lists or other documents, in any medium capable of being fixed or rendered in tangible format from which it can later be perceived, reproduced and/or otherwise communicated , containing in whole or in part any of the Confidential Information or Trade Secrets."

19.     Plaintiff's Chairman and CEO Mr. Howell risked a substantial part of his life savings in the start-up of TECH USA.  Mr. Howell knows from personal experience that obtaining a customer and then holding onto that customer in today's highly competitive marketplace is a very difficult, time-consuming and investment-intensive process, especially in the staffing industry in which Plaintiff TECH USA competes.

10

20.     From each of its offices, TECH USA expends a large amount of money, time, and other resources on its salespeople, training them to research their territory and to find and acquire customers and develop customer relationships.  Plaintiff also makes major investments in national sales training conferences which Defendant Ms. Clayton and all, or almost all, of TECH USA's account executives, Managing Directors, and/or recruiters attend.  For even a well-trained salesperson, obtaining a new customer can take anywhere from six (6) to twenty-four (24) months from initial "cold call" or introduction/referral, to obtaining various meetings, to placing the first contract employee on assignment there with the customer (or providing a new employee for direct placement with the customer). The 12-month duration of the covenant not to compete in Ms. Clayton's Confidentiality/Non-Competition Agreement with TECH USA reflects that lengthy sales cycle and also the fact that, after a salesperson or recruiter leaves TECH USA's employment, there needs to be a reasonable period (12-24 months) in which the former salesperson or recruiter refrains from soliciting Plaintiff's customers and employees and/or competing in the relevant market area where such former employee worked.  This hiatus allows for the orientation and training of a new salesperson to replace the former employee and for the orderly transition to the replacement salesperson of TECH USA customer accounts that the former salesperson serviced during his/her employment.  While a 12-month restriction is the timeframe that some of Plaintiff's competitors have in their non-compete agreements with their employees, others choose an 18-month or lengthier period, which is also reasonable in the industry.

21.     In training its staffing salespeople and recruiters, TECH USA provides them with Confidential Information and Trade Secrets that TECH USA has developed over its 15-year history, affording the salesperson access to specific data on existing customers and prospective

customers, including but not limited to non-public contact information for those customers'
hiring managers, as well as methods, techniques, and tools to price Plaintiff's services and
expand its business/servicing footprint within the customer's organization, in order to grow
TECH USA's offerings/services from finding personnel for one business unit or department (e.g.
IT) within a customer to several units or departments with the customer's organization (e.g.
Engineering, Infrastructure-Telecommunications, etc.).   Confidential Information and Trade
Secrets that TECH USA salespeople, including the Defendant Ms. Clayton, receive in order to
perform their jobs include corporate and other customer names, street addresses, telephone
numbers, hiring manager contact information (including, without limitation, hiring manager
direct dial phone number and email address), pricing margins used in past transactions, customer
preferences on preferred staffing solutions -- whether they utilize contract assignments,
direct/permanent placements, "temp to perm" (otherwise known as "right to hire") arrangements,
or other staffing solutions -- in securing new personnel.

22.    All of the Confidential Information and Trade Secrets described in the preceding
paragraph constitutes information that TECH USA has developed over many years with
substantial effort and experience; Plaintiff has safeguarded that Confidential Information and
those Trade Secrets -- it was not and has not been public information, nor was it (or has it been)
readily available to Plaintiff's competitors.   In fact, the Confidential Information and Trade
Secrets would be very valuable to TECH USA's competitors, and it would take them substantial
time and expense to ascertain it.   While an element or two of the above Confidential Information
and Trade Secrets may be ascertainable outside of TECH USA's business (such as the
customer's corporate name and a switchboard or other listed phone number), it is the
combination of all of the elements, especially hiring manager contact information, including

hiring managers' and other contact persons' email addresses and direct dial phone numbers, customer pricing margins, and customer preferences on preferred staffing solutions, together with the identity, skillsets, salary levels, and contact information of the TECH USA employees providing those solutions, that proves extremely valuable, indeed indispensable to TECH USA's (and to any competitor's) business. That information as a whole is not known outside of Plaintiff's business. Indeed, Defendant Ms. Clayton, formerly with Plaintiff's IT Vertical/division has joined Defendant S3, an Information Technology Consulting firm in virtually the same role: Account Manager/Account Executive. The TECH USA Confidential Information and Trade Secrets possessed by Defendant Ms. Clayton are particularly valuable to her new employer Defendant S3.

23. Only those employees of Plaintiff involved in recruiting, sales (such as Ms. Clayton), and sales management, know the above Confidential Information and Trade Secrets, and TECH USA safeguards it by taking such measures as (i) requiring that recruiting, sales, and sales management employees of Plaintiff who need access to Confidential Information and Trade Secrets (in order to service TECH USA customers and accounts) sign Plaintiff's form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects those Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the above Confidential Information and Trade Secrets to third parties outside of TECH USA, and (iii) not posting Plaintiff's customer names or other customer information (or Plaintiff employee names or other Plaintiff employee information) on the TECH USA website; rather, the TECH USA Confidential Information and Trade Secrets are provided only to those management, sales and recruiting employees (who comprise a small percentage of Plaintiff's total employee roster) having a "need

13

to know."  Access to the current TECH USA database that came into use in 2006 is via unique user name and password only, both of which are inactivated when an employee leaves the company.  The above Confidential Information and Trade Secrets are extremely valuable to TECH USA and its competitors because, armed with that Information and those Secrets, a competing staffing firm or former employee of Plaintiff could initiate a business relationship with Customers of TECH USA and steal business from Plaintiff.  On information and belief, Defendant Ms. Clayton is wrongfully using, for her and Defendant S3's own benefit, TECH USA's Confidential Information and Trade Secrets in order to steal business from TECH USA, all in violation of the terms of Defendant Ms. Clayton's Confidentiality/Non-Competition Agreement with Plaintiff.

24.    As described above, Plaintiff expends months of effort and much money, e.g. salaries of TECH USA management, recruiting, and sales employees (including the tens of thousands of dollars expended on Defendant Ms. Clayton's compensation over almost two years with TECH USA, on her sales development efforts, time and expenditures on meetings with customer representatives, and the like) in developing and enhancing the Confidential Information and Trade Secrets.  Properly acquiring or duplicating the above Confidential Information and Trade Secrets, as a whole, would be very difficult to accomplish because such Information and/or Secrets are not located in one publicly accessible database.  It has been developed over many months and years of numerous cold calls and meetings, and includes, as well, Plaintiff's detailed experience in actual transactions with the customer(s) in order to determine pricing margins and customer preferences on staffing solutions provided.

25.    TECH USA's Managing Directors (who are also in sales) and outside salespersons (known as "Account Executives" or "Business Development Managers"), as well as

Plaintiff's inside salespersons (beginning with entry-level "Recruiters" having promotion opportunity to "Senior Recruiters"), all sign their own "Confidentiality/Non-Competition Agreement" with Plaintiff in order to protect Plaintiff's interests in its business relationships with TECH USA customers and contract employees (or candidates) that Plaintiff assigns/refers to its customers, and also to protect Plaintiff's Confidential Information, Trade Secrets, and Company Property that are made available to TECH USA employees in order for them successfully to secure and service customers.  Despite the extended sales cycle needed to secure certain large corporate customers (up to 24 months), Defendant Ms. Clayton was required to sign a non-competition agreement with a duration of only 12 months, when 18 months (now used by TECH USA) would have been more appropriate.  Moreover, twelve months of "cooling off" by locking out a former employee from a particular market or group of customers s/he serviced while a TECH USA employee, as explained above, affords Plaintiff a reasonable (but sometimes insufficient) opportunity to train the new salesperson to replace the former employee and to transition the accounts in question to the new salesperson without interference from the former employee.  On the other hand, TECH USA's reasonable post-term restrictions do not unduly burden a former employee in her/his job search or pursuit of new career opportunities.

26.     The geographic scope of TECH USA's non-compete (50 miles) reflects the typical size of a large metropolitan area in the United States.  Although TECH USA operates in many larger markets such as Northern Virginia/Washington, D.C., Atlanta, Orlando, Tampa, Dallas, Phoenix/Tempe, Baltimore/Central Pennsylvania (I-83, I-695, and I-97 corridors), and Philadelphia/Southern New Jersey/Delaware where a distance of 75 or even 100 miles might be appropriate, Plaintiff's CEO Mr. Howell directed that the geographic line be drawn at 50 miles, a benefit to former employees.  If there were no such restriction from each TECH USA office in

15

which an employee had worked, then a former employee (such as the Defendant Ms. Clayton) would be free to join or locate an existing or new competing business near one of Plaintiff's offices where that employee worked and attempt to exploit for her/his own benefit TECH USA's Confidential Information/Trade Secrets and compete directly with that TECH USA office by soliciting many of Plaintiff's Customers there (including, without limitation, ones the former employee had serviced at the TECH USA office/offices where s/he had worked).  In this case, based on her admissions to TECH USA management as she was resigning, Defendant Ms. Clayton intended to do just that, as well as (on information and belief) to attempt to recruit Plaintiff's employees from the Charlotte, NC office to work with or for Defendant Ms. Clayton (or her new employer Defendant S3) in Charlotte, NC, in the vicinity of (and definitely within 50 miles of) TECH USA's Charlotte office.  Again, the fifty (50) mile radius strikes a reasonable balance between Plaintiff's business interests and its former employee's ability to earn a livelihood; indeed, it is overly reasonable to the Defendant Ms. Clayton.  TECH USA's former employees, such as Defendant Ms. Clayton, are then free to be employed in a similar job outside the restricted area, or in a different industry or job within the 50-mile restricted area, as long as s/he does not violate the other provisions of her Confidentiality/Non-Competition Agreement with TECH USA.  Here, the Defendant Ms. Clayton, who had served as a "Account Executive" in the IT Vertical for TECH USA in Charlotte, NC, has chosen to be employed as an "Account Manager" in a competing Information Technology Consulting firm's Charlotte office within the 50-mile prohibited zone - - a clear violation of her Confidentiality/Non-Competition Agreement with TECH USA.

## COUNT I

**Breach of Contract (Post-Term Covenant Not to Compete) – Defendant Ms. Clayton**

27.     Plaintiff TECH USA hereby incorporates paragraphs 1-26 as if each were fully set forth herein.

28.     By reason of Account Executive Ms. Clayton's resigning her sales position with TECH USA's Information Technology (IT) Vertical/division to join TECH USA competitor (and co-Defendant) IT Consulting firm S3's Charlotte, NC office in the similar position of "Account Manager", well within "fifty (50) miles" of Plaintiff's Charlotte, NC office where she worked for TECH USA, [see Agreement, ¶ 4(a)], Defendant Ms. Clayton has violated the post-term non-competition covenant in the Confidentiality/Non-Competition Agreement ¶ 4(a). Further, it is indisputable that she is engaged in "(in whole or in part) in the business of recruiting or providing employees, on a temporary or permanent basis," within 50 miles of the Charlotte, NC office of Plaintiff where she used to work and within 12 months of her Termination of Employment, all in violation of Confidentiality/Non-Competition Agreement ¶ 4(a).  By meeting at length with TECH USA employees on February 12, 2013, and subsequent LinkedIn profile updates and other communications, Defendant Ms. Clayton has continually advertised and promoted her S3 status to current TECH USA employees, further causing TECH USA irreparable harm.

29.     The Defendant Ms. Clayton's acts (as detailed above) in violating the post-term covenant not to compete in the Confidentiality/Non-Competition Agreements that she signed with TECH USA have caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA.  The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment against the Defendant Ms. Clayton as follows:

(a) Entry of a Preliminary and Permanent Injunction pursuant to FRCP 65, and paragraphs 4(a) and 5 of her Confidentiality/Non-Competition Agreement with the Plaintiff in this case, enjoining the Defendant Ms. Clayton, her agents, servants, and employees, and all those acting in concert with them, from violating the non-competition provisions of each of such Agreements.

(b) Entry of an Order requiring an accounting by the Defendant Ms. Clayton to TECH USA of her sales and revenues from her contractual violations, as to which sales and revenues TECH USA may be entitled as a result of such Defendant Ms. Clayton's aforesaid acts.

(c) Entry of a judgment against Defendant Ms.  Clayton for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreements between Plaintiff and each of the Individual Defendants).

## COUNT II

### Breach of Contract (Confidential Information) – Defendant Ms. Clayton

30.     Plaintiff TECH USA hereby incorporates paragraphs 1-29 as if each were fully set forth herein.

31.     When announcing her resignation to join Plaintiff's competitor (and her co-Defendant) Information Technology Consulting firm S3 in its nearby Charlotte, NC office in the practically identical sales role of "Account Manager," Defendant Ms. Clayton admitted to Plaintiff's management in TECH USA's Charlotte, NC office that, in meeting with Defendant S3 representatives prior to her resignation, she shared her signed TECH USA Confidentiality/Non-

Competition Agreement and was advised that she was "fine" to join S3 - - the TECH USA Agreement posed no problems for her.   On information and belief, she also revealed and reviewed with Defendant S3 names and other information on TECH USA's customers.

32.     The names and other information on Plaintiff's customers that Defendant Ms. Clayton, on information and belief, revealed to Plaintiff's competitor Defendant S3 prior to her resignation from TECH USA employment constitute "Confidential Information" (as defined in Defendant Ms. Clayton's Confidentiality/Non-Competition Agreement with TECH USA) and also constitute "Trade Secrets" (as defined under Maryland law).  Such disclosure by Defendant of Confidential Information for her own benefit (or for the benefit of a third party, including, without limitation, Defendant S3) was in clear violation of the Confidentiality/Non-Competition Agreement the Defendant Ms. Clayton had entered into with Plaintiff.

33.     Any and all use of TECH USA's Confidential Information (as detailed above) by the Defendant Ms. Clayton for her own benefit (or for the benefit of a third party, including, without limitation, Defendant S3) and/or merely the disclosure or divulging of Plaintiff's Confidential Information to any such third party would constitute acts in violation of paragraph 1 of the Confidentiality/Non-Competition Agreement(s) between Defendant Ms. Clayton and Plaintiff.

34.     Those acts described above by Defendant Ms. Clayton in violation of the Confidential Information provisions of her Confidentiality/Non-Competition Agreement have caused, and, unless enjoined, will continue to cause damage and irreparable harm to Plaintiff TECH USA.  The harm cannot be fully compensated in monetary damages.

        WHEREFORE, Plaintiff prays judgment as follows:

(a)      Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement, enjoining the Defendant Ms. Clayton, her agents, servants, and employees, and all those acting in concert with them, from violating the Confidential Information provisions of such Agreement.

(b)      Entry of an Order requiring an accounting by the Defendant Ms. Clayton to TECH USA of Defendant Ms. Clayton's sales and revenues resulting from her unauthorized use of TECH USA's Confidential Information, as to which sales and revenues TECH USA may be entitled as a result of their aforesaid acts.

(c) Entry of a judgment against the Defendant Ms. Clayton for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9, the attorney fees provision of the Confidentiality/Non-Competition Agreement between Plaintiff and Ms. Clayton).

## COUNT III

**Breach of Contract (Misappropriation of Company Property)–Defendant Ms. Clayton**

35.      Plaintiff TECH USA hereby incorporates paragraphs 1-34 as if each were fully set forth herein.

36.      On information and belief, Defendant Ms. Clayton had removed from Plaintiff's premises in Charlotte, NC, at some point before or shortly after her abrupt resignation on February 11, 2013, certain Company Property of TECH USA, including, without limitation, TECH USA customer list(s), Plaintiff's Customers' hiring manager contact information, email addresses, direct dial telephone numbers, customer pricing and margin tolerances, and other confidential and/or privileged information.  Any continued retention by Defendant Ms. Clayton

of Company Property of TECH USA is a violation of their Confidentiality/Non-Competition Agreement, paragraph 2.

37.    The above-described violations of the Company Property provisions in paragraph 2 of the Defendant Ms. Clayton's Confidentiality/Non-Competition Agreement with Plaintiff has caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA. The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment against Defendant Ms. Clayton as follows:

(a)    Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 2 and 5 of the Confidentiality/Non-Competition Agreement, enjoining the Defendant Ms. Clayton, her agents, servants, and employees, and all those acting in concert with them, from violating the provisions of paragraph 2 of the Confidentiality/Non-Competition Agreement, and ordering the return of all Company Property in or under her (or their) possession or control to TECH USA within five (5) days of this Court's Injunction order.

(b)    Entry of an Order requiring an accounting by the Defendant Ms. Clayton to TECH USA of Defendant's sales and revenues as a result of or in connection with Defendant's aforesaid acts in violation of paragraph 2 of the Confidentiality/Non-Competition Agreement.

(c)    Entry of a judgment against the Defendant Ms. Clayton for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Ms. Clayton).

**COUNT IV**

**Statutory Trade Secret Misappropriation – Defendant Ms. Clayton and S3**

38.     Plaintiff TECH USA hereby incorporates paragraphs 1-37 as if each were fully set forth herein.

39.     As recited in paragraph 1 of the Confidentiality/Non-Competition Agreement, in addition to Confidential Information, the Defendant Ms. Clayton received from Plaintiff in the course of her TECH USA employment Trade Secrets (as defined in the Maryland Uniform Trade Secrets Act) (the "Act"), Md. Comm. Law Code Ann. §11-1201(e).

40.     Among the Trade Secrets entrusted to Defendant Ms. Clayton during her employment with Plaintiff was its customer list(s), including, without limitation, the identity of various TECH USA customers, as well as points of contact such as hiring managers at such customers (including without limitation such managers' email addresses and direct dial telephone numbers) and such customers' pricing/margins for contract assignments of personnel, direct placements, right-to-hire arrangements, and other staffing solutions preferred by such customers.  The Trade Secrets described throughout this Count constitute information that TECH USA has developed over many years (with substantial effort and expenditures of resources) and that Plaintiff has safeguarded as Trade Secrets - - it was not public information, nor was it readily available to its competitors.  In fact, the Trade Secrets would be very valuable to TECH USA's competitors, and it would take them substantial time and expense to ascertain.

41.     Only those of Plaintiff's employees involved in management, sales and recruiting have access to the above Trade Secrets, and TECH USA safeguards those Secrets by taking such measures as (i) requiring that those employees of Plaintiff who access Trade Secrets in order to service its customers and accounts (such as Defendant Ms. Clayton) to sign the TECH USA-

form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects Plaintiff's Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the Trade Secrets to third parties outside of TECH USA, and (iii) not posting Plaintiff's customer names or other customer information on the TECH USA website.  Instead, Plaintiff's Trade Secrets are provided to those sales and recruiting employees (who comprise a small percentage of TECH USA's total employee roster) having a "need to know," and access to the company database started in 2006 is via unique user name and password only, both of which are inactivated when an employee leaves the company.

42.     Defendant Ms. Clayton expressly agreed in the first sentence of paragraph 5 of the Confidentiality/Non-Competition Agreement that she signed with TECH USA that any breach by Defendant of paragraphs 1-4 of that Agreement "will cause [TECH USA] immediate irreparable harm and that no remedy at law would be adequate to compensate [TECH USA] in any such event."

43.     In meeting(s) with Defendant S3's representatives prior to her abrupt resignation from Plaintiff, (on information and belief) Defendant Ms. Clayton, an Account Executive in Plaintiff's IT Vertical/division, misappropriated TECH USA's Trade Secrets after Termination of Employment, for her own (and/or their) benefit, and/or for the benefit of a third party, including, without limitation, Defendant S3, an Information Technology Consulting firm that competes with Plaintiff.   On information and belief, such acts of Defendant(s) in misappropriating TECH USA's Trade Secrets have been willful and malicious.

44.     On information and belief, Defendant S3 willfully and maliciously engaged in the misappropriation of TECH USA's Trade Secrets by receiving TECH USA's Customer

information in meeting(s) with Defendant Ms. Clayton prior to her abrupt resignation from Plaintiff.  As an IT Consulting/staffing firm with more than two decades experience in the IT services and staffing industries, Defendant S3 knew (or should have known) that the information described above that it was gleaning from Defendant Ms. Clayton consisted of its competitor TECH USA's Trade Secrets.

45.    Plaintiff has suffered damage and, unless the misappropriation detailed above is enjoined, will continue to suffer damage as a result of Defendant Ms. Clayton's and/or Defendant S3's unlawful misappropriation of Plaintiff's Trade Secrets.  The harm cannot be fully recompensed in monetary damages, and is irreparable.

WHEREFORE, Plaintiff prays judgment as follows:

(a)    Entry of a Preliminary and Permanent Injunction against Defendants Ms. Clayton and S3 and their agents, servants and/or employees, and all those acting in concert with any of them, enjoining them pursuant to § 1202 of the Act and paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement from using or disclosing TECH USA's Trade Secrets for their own benefit and from otherwise violating the Act and/or paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement.

(b)    Entry of a judgment jointly and severally against Defendants Ms. Clayton and S3 pursuant to § 1203 of the Act for exemplary damages in an amount not exceeding twice any damages award made under § 1203(a), because such Defendant(s) have (as stated above) engaged in a willful and malicious misappropriation, except (as to Ms. Clayton only) to the extent a damage claim against her is required to be arbitrated.

(c)    Entry of a judgment jointly and severally against Defendants Ms. Clayton and S3 for Plaintiff's costs and expenses (including, without limitation, its reasonable

attorneys' fees and court costs in connection with the proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Ms. Clayton).

(d)      Entry of a judgment jointly and severally against Defendants Ms. Clayton and S3 pursuant to § 1204 of the Act for Plaintiff's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding), since Defendant(s) have (as stated above) engaged in a willful and malicious misappropriation.

## COUNT V

## Tortious Interference with the Contract between the Plaintiff and Defendant Ms. Clayton – Defendant S3

46.      Plaintiff TECH USA hereby incorporates paragraphs 1- 45 as if each were fully set forth herein.

47.      Plaintiff established contractual and other advantageous business relationships with its key management, sales, and recruiting employees including, without limitation, the Defendant Ms. Clayton.

48.      Defendant S3, as an IT Consulting/staffing firm with more than two decades experience in the IT services and staffing industries, knew well of TECH USA's contractual and other advantageous business relationships with its key management, sales, and recruiting employees, and, furthermore, learned of Defendant Ms. Clayton's contract with TECH USA when speaking with her in detail about that contract and (on information and belief) regarding TECH USA's customers prior to her resignation from TECH USA employment.

49.      Despite knowledge of Plaintiff's advantageous business relations and contractual relationships with its key management, sales, and recruiting employees, Defendant S3 tortiously and, on information and belief, maliciously, intentionally and unjustifiably, interfered in TECH

USA's business relations and contractual relations with Defendant Ms. Clayton by effectively soliciting and encouraging the Defendant Ms. Clayton to breach her contractual and legal obligations to Plaintiff and resign her employment, in violation of Defendant Ms. Clayton's contractual obligations to TECH USA on Non-Competition, and, on information and belief, causing her to divulge/disclose Confidential Information (in violation of Ms. Clayton's contractual obligations) and Trade Secrets (in violation of Maryland law).

50.     Additionally, Defendant S3 told Defendant Ms. Clayton that her new employment with S3 would be "fine," thereby stating or implying to her that the TECH USA Confidentiality/Non-Competition Agreement is unenforceable, a falsehood that Defendant Ms. Clayton has, on information and belief, repeated to several current TECH USA employees, thereby further irreparably harming Plaintiff TECH USA in its contractual relations generally with its other employees.

51.     Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of the Defendants' tortious interference.   The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against Defendant S3 as follows:

(a)     Entry of a Preliminary and Permanent Injunction against Defendant S3, its agents, servants and/or employees, and those acting in concert with it, enjoining them from further tortious interference.

(b)     Entry of an Order requiring an accounting by Defendant S3 to TECH USA of its sales and revenues, as a result of its aforesaid acts of tortious interference, and awarding Plaintiff punitive damages from Defendant S3 in the amount of One Million Dollars ($1,000,000).

(c)        Entry of a judgment against Defendant S3 for TECH USA's costs and expenses.

## COUNT VI

### Breach of Duty of Loyalty – Defendant Ms. Clayton

52.     Plaintiff TECH USA hereby incorporates paragraphs 1-51 as if each were fully set forth herein.

53.     As an Account Executive, Defendant Ms. Clayton owed a duty of loyalty to Plaintiff.  Given her sensitive position in sales in Plaintiff's IT Vertical/division and in dealing with some of TECH USA's most valued customers, Defendant Ms. Clayton was entrusted with TECH USA's Confidential Information and Trade Secrets.

54.     On information and belief, Defendant Ms. Clayton breached her duty of loyalty to Plaintiff:

(i)        by acting contrary to the best interests of her employer and principal, TECH USA, both during employment and after her resignation;

(ii)        by disclosing to TECH USA competitor Defendant S3 information on TECH USA customers, in violation of her obligations as to Confidential Information (under agreement with TECH USA) and Trade Secrets (pursuant to Maryland law);

(iii)        by failing to act solely in the best interests of TECH USA;

(iv)        by misusing and misappropriating information belonging to TECH USA which Plaintiff intended to be confidential and the disclosure of which is likely to cause irreparable harm to TECH USA.

(v)        by falsely telling other employees of TECH USA, both before and after her resignation, what Defendant S3 had stated or implied to her: namely, that TECH USA's Confidentiality/Non-Competition Agreement is unenforceable.

55.    Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendant Ms. Clayton's breach of duty of loyalty.   The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against the Defendant Ms. Clayton as follows:

(a)        Entry of a Preliminary and Permanent Injunction against Defendant Ms. Clayton and her agents, servants and/or employees, and those acting in concert with them, enjoining them from further breach of the duty of loyalty.

(b)        Entry of an Order requiring an accounting by Defendant Ms. Clayton to TECH USA of her sales and revenues, as a result of her aforesaid acts in [malicious] breach of the duty of loyalty, and awarding Plaintiff punitive damages from Defendant Ms. Clayton in the amount of One Million Dollars ($1,000,000), except to the extent a damage claim against her is required to be arbitrated.

(c)        Entry of a judgment against Defendant Ms. Clayton for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Ms. Clayton).

## COUNT VII

### Common Law Unfair Competition - Both Defendants

56.     Plaintiff TECH USA hereby incorporates paragraphs 1-55 as if each were fully set forth herein.

57.     On information and belief, each of the Defendants has committed the tort of unfair competition against Plaintiff.  They have acted unfairly and deceptively, and have acted deliberately, maliciously, and with reckless disregard for Plaintiff's rights and the rights of members of the public.

58.     Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendants' unfair competition, as described above.  The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against all of the Defendants as follows:

(a)     Entry of a Preliminary and Permanent Injunction against all of the Defendants and their agents, servants and/or employees, and those acting in concert with them, enjoining them from engaging in unfair competition with TECH USA.

(b)     Entry of an Order requiring an accounting by the Defendants to TECH USA of their respective sales and revenues, as a result of the aforesaid acts in violation of the common law of unfair competition, and awarding Plaintiff punitive damages from the Defendants, jointly and severally, in the amount of One Million Dollars ($1,000,000), except (as to Ms. Clayton only) to the extent a damage claim against her is required to be arbitrated.

(c)     Entry of a judgment against the Individual Defendants jointly and severally for TECH USA's costs and expenses (including, without limitation, its reasonable

attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Clayton).

## COUNT VIII

### Civil Conspiracy - Both Defendants

59.    Plaintiff TECH USA hereby incorporates paragraphs 1-58 as if each were fully set forth herein.

60.    On information and belief, Defendants agreed:

(i) that Defendant Ms. Clayton would violate her various obligations under her Confidentiality/Non-Competition Agreement with TECH USA including, without limitation, her covenant not to compete and obligations with respect to Confidential Information/Trade Secrets, which she did;

(ii)   that Defendant Ms. Clayton would breach Defendant Ms. Clayton's duty of loyalty owed to TECH USA, which occurred;

(iii) that Defendant S3 would interfere tortiously with TECH USA's contractual and other advantageous business relationships with its key management, sales, and recruiting employees, which it did;

(iv) that Defendant Ms. Clayton would compete against Plaintiff in blatant (or other intentional) disregard of the post-term covenants not to compete in the Confidentiality/Non-Competition Agreement between TECH USA and Defendant Ms. Clayton, which she did;

(v) to misappropriate Plaintiff's Confidential Information (in violation of such Confidentiality/Non-Competition Agreement) and TECH USA's Trade Secrets (in violation of Maryland Law), which they did; and

(vi) to compete unfairly with Plaintiff, which they did.

61.     On information and belief, the Defendants committed the above civil conspiracy with malice toward the Plaintiff.

62.     Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendants' civil conspiracy and acts in furtherance thereof, as described in paragraphs 60-61 above.  The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against the Defendants as follows:

(a)     Entry of a Preliminary and Permanent Injunction against the Defendants and their agents, servants and/or employees, and those acting in concert with them, enjoining them from future acts in furtherance of the civil conspiracy.

(b)     Entry of an Order requiring an accounting by the Defendants to TECH USA of their sales and revenues, as a result of their aforesaid civil conspiracy, and awarding Plaintiff compensatory damages, and, in light of the Defendants' engaging in the aforesaid civil conspiracy with malice toward the Plaintiff, punitive damages from all of the Defendants, jointly and severally, in the amount of One Million Dollars ($1,000,000), except (as to Ms. Clayton only) to the extent a damage claim against her is required to be arbitrated.

(c)     Entry of a judgment against the Defendants, jointly and severally, for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Clayton).

Dated: March 14, 2013

Allan P. Hillman
Kern & Hillman, LLC
2911 Dixwell Avenue, Suite 203
Hamden, CT 06518-3915
(203) 782-9076
allan@franchiselawsource.com
U.S. District Court No. 00119


Grover C. Outland III
TECH USA, LLC
8334 Veterans Highway
Millersville, MD 21108
(410) 987-1011
outland@techusa.net
U.S. District Court No. 24064

Attorneys for Plaintiff